or arguments not to exceed 15 minutes per side Mr. Kenneth Wynne-Allen for the Appellate Cross Appellee. Good morning, Your Honor. May it please the Court, Wynne-Allen from Kirkland & Ellison.    I would like to reserve four minutes for rebuttal. I will address two arguments in my time with the Court today. First, the District Court correctly held that the collective bargaining agreements in this case did not promise vested lifetime health care benefits. And second, the District Court erred on a narrow issue when it held that Honeywell was required to pay the full premium for retiree health care benefits during the entire term of the 2011 CBA even after the limits at issue in this case became effective. Let me start with the District Court's vesting ruling. The District Court's conclusion that these CBAs did not promise vested health care benefits is entirely consistent with the Supreme Court's decisions in Tackett and Reese and this Court's decisions in a number of cases including Fletcher, Cooper, Cole, Watkins, and Gallo. As this Court recently said in Fletcher, quote, a CBA's general durational clause applies to health care benefits unless it contains clear affirmative language indicating the contrary. That rule resolves the vesting issue in this case. The CBAs here all contain... Does that rule resolve all of the vesting issues in this case or are you now only on the full premium vesting issue? It resolves all of the vesting issues in this case. The full premium versus cap floor issue is not a vesting question. It's a question about how much Honeywell owed during the term of the 2011 CBA issue. So that's a separate question that I'm happy to address. But the rule of Fletcher resolves the vesting questions in this case, which goes to the duration of the benefits that Honeywell has to provide. But there are two vesting arguments, right? Plaintiffs do have two vesting arguments. Sometimes they've argued that the entire health care plan is vested and sometimes they argue that Honeywell's obligation to make certain premium contributions are vested. But your first argument is covering both of those aspects of vesting, right? That's correct, Your Honor. The rule of Fletcher resolves both of those questions. What about the language about notwithstanding all future negotiations? Why doesn't that imply vesting? That's dealing with a specific part of the overall retiree health care plan. It's dealing with premium contributions that Honeywell has to make. It's not promising that the entire retiree health care plan is vested, and, in fact, the entire plan is subject to the specific durational clause in the agreement regarding insurance. The language there is saying for as long as the plan is in effect, Honeywell will make premium. You're making up that language about so long as the plan is in effect. That isn't in the language. Oh, no, I don't mean to make up. I can point to the language that I think reflects what I'm telling the court here. If you look at page ID 5655, it speaks to the company's contribution for health care coverage. So it's talking about the premium contributions that Honeywell will make for, quote, retirees and surviving spouses, quote, covered under the UAW Honeywell master agreement. So it covers only those people who receive coverage under this agreement, and then it specifically defines the health care coverage that Honeywell is contributing to. That's also at page 5655. It says, quote, health care coverage includes hospital, surgical, medical, drug, vision, and hearing benefits under the Blue Cross Blue Shield program or any program that the parties may negotiate in the future to replace the Blue Cross Blue Shield. But doesn't the CBA also specify that Honeywell's contributions must also be provided under any program that the parties may negotiate in the future to replace the Blue Cross Blue Shield program? That is absolutely true, Judge Stanch. And the problem here is in the 2017 CBA, Honeywell and the UAW did not negotiate a plan to replace the Blue Cross Blue Shield program. They did not. Then isn't the real question whether creating this floor-level benefits and specifying that they shall remain in effect no matter all, without regard to all future negotiations, isn't the question whether that language in fact is a commitment that once put to pen and paper establishes the need to either use that contribution in an existing plan or create another one for its use? No. It is an agreement that Honeywell will pay the premiums for enrolling in a very specific plan that's identified in the CBA, the Blue Cross Blue Shield program. Doesn't the language in the CBA mean that you are required to provide any program that the parties may negotiate in the future? That's absolutely correct. The parties in the 2017 CBA negotiations, however, did not negotiate a plan to replace the Blue Cross Blue Shield program. I think we're talking past each other because the real question is did they, by creating the floor-level benefits, in fact create the plan or the responsibility or duty to format a plan that would be satisfied with those contributions? No. It's the preceding question. I understand. And respectfully, the answer to that is no, Your Honor. Why? The agreement to vest the entire retiree health care plan is a much larger, different, much more economically significant agreement than an agreement to provide certain premium contributions while the plan is in effect. But it's the premium contributions that define what you're able to afford in creating a program for health care. No, I don't believe so. The premium contributions are part of a larger retiree health care plan, and Honeywell agreed in this language that for as long as the parties agreed to renew the retiree health care plan, Honeywell would make those. Show me that language. I think that's where we're struggling is that we all understand Fletcher's rule. The question is, what does it mean to clearly and affirmatively show, to make that showing that something has been established or vested? And I think the question that strikes me as at issue is when you say we're going to pay these premiums, and despite all future negotiations, why that doesn't mean that you have agreed to create a plan that will employ those contributions for the individuals that are covered. Because the contract did not say Honeywell is agreeing to create a retiree health care plan. No, it doesn't say it there, but it says it. It says that you can either have the plan that exists or you can have any program that the parties may negotiate in the future to replace it. Why isn't it a negotiation to set a floor-level benefit that you have created a payment that the company is then responsible for setting into a program that provides benefits relative to that guaranteed payment? Because there is no guaranteed plan. There are guaranteed payments if the parties agree to a plan. That's why it says any program the parties may negotiate in the future to replace the Blue Cross Blue Shield program. Here, Honeywell and the UAW did not negotiate a plan to replace the Blue Cross Blue Shield program. So you're saying that would cut off your liability in 2017? Well, it's cut off our liability, yes, in 2017 or 2016 when the prior CBA expired. And so, again, and it's in the language here. These are not freestanding monetary contributions. It says the company's contribution for health care coverage, and then it defines what health care coverage is. Again, it says health care coverage includes the Blue Cross Blue Shield program and any program the parties may negotiate in the future to replace the Blue Cross Blue Shield program. Elsewhere, at page ID 5598, it makes clear that these are payments made on behalf of each subscribing retiree. They are not monetary payments made to the retirees that they can put toward any plan that they want. It's only if they subscribe in the retiree health care plan that the parties agree to provide if the parties agree to provide it. And the problem here— I'm struggling because I don't see the if the parties agree to provide it language anywhere within the CBA or in the insurance contract agreement. Well, Your Honor, if Honeywell agreed to make premium contributions for health care coverage and health care coverage is defined as the Blue Cross Blue Shield plan or any plan they negotiate to replace it, well, if there's no longer a Blue Cross Blue Shield plan and they didn't negotiate to replace any plan, then the retiree— That's where we're, I think, talking past each other. The question becomes when the two parties negotiated for a flat floor benefit payment, why doesn't that negotiation that specifies without regard to any future negotiations, why doesn't that create the duty to have a plan that employs that level of benefits? Honeywell is the one that suggested that level of benefits, so that level of money, and whatever benefits that level buys, why isn't that a promise to provide those? With respect, Your Honor, the contract does not say that Honeywell has a duty to renew the retiree health care plan or has an obligation to continue the retiree health care plan. But that's what we're talking about. I understand. What is the clear language that's necessary to do that? Your position is every moment of every day Honeywell had the ability to come in and say, sorry, guys? No. At the end of the CBA, at the end of the effective date of the CBA, that's when Honeywell had the opportunity to renegotiate these benefits. And that's clear from the specific durational clause at 5595 that says, this agreement relating to insurance shall remain in full force and effect without change until it dates certain. And this court held in Watkins that a specific durational clause like that is unambiguous against vesting because it says the retiree health care plan will remain in effect while the CBA is in effect. Once the CBA expires, the parties will come together and renegotiate. If they agree to renew the retiree health care plan, then there will be a plan in the next CBA. If they don't agree to renew the retiree health care plan, there will no longer be retiree health care coverage. Then why doesn't that make the language that says, without regard to all future negotiations, superfluous in meaning? It's not superfluous because it's contingent on the parties agreeing to renew the retiree health care plan. So if the parties do, in fact, renew the retiree health care plan in the next collective bargaining agreement, then Honeywell will make these premium contributions as it promised to do and as it did in this case. But if the parties don't renew the retiree health care plan, then the retirees own no premiums, and Honeywell, therefore, can't contribute to any of the premiums. I'm just struggling with whether that's an illusory promise to say, despite all future negotiations, here's what we're going to pay in on your behalf, and then to say, except unless we decide we're not going to have a plan at all and then you're out of luck. May I leave to answer your question? Oh, please. It is not illusory at all because, again, it recognizes that the retiree health care plan can be renewed by the parties in the next CBA negotiation as it has been in prior negotiations, and it's a promise that if we renew this, we will continue to pay these benefits to you at this level. But it would be a much more different, highly more significant, much more costly promise to say, oh, and in addition to that, we promise you we will renew the retiree health care plan for life or into perpetuity. That's the promise that's not in this contract, and that's what the specific durational language in the contract prevented by terminating the plan on the date certain. Further questions? Thank you. Thank you, Your Honor. We have a little time. May it please the court. John Adam on behalf of the 4,700 retirees and their families in UAW. I'd like to reserve three minutes of rebuttal. I would like to use my time to focus on this floor-level vesting issue because this language is unique, and you will not find it in any pre-TACIT case, let alone any post-TACIT case. And what is the promise? The promise is of health care contributions for present and future retirees, which shall not be less than a fixed dollar amount, notwithstanding all future negotiations. This promise negotiated in 2003 will not take effect until 2008, after the expiration of the 2003 CBA, and this language is unique because it expresses the party's intention. Again, something you will not find in Fletcher or any of the other cases. It says this language was negotiated for the protection of retiree health care benefits. And again, I want to emphasize that the so-called floor-level obligation in the 2003 negotiations begins after the expiration. That's what makes this contract language unique. That's what makes this contract language unique. But haven't we addressed that issue before about caps or fours or things that are going to happen in the future, and that's just something that happens in negotiations. You give up something. You promise something that might happen. Maybe the agreement's not going to get renewed. It'll carry on. You don't know. But it doesn't mean that it's vested, does it? Well, those other cases, the so-called cap cases, were nothing like this one. This one has mandatory language, shall not be less than a hard dollar amount, approximately $4,000 for Medicare and approximately $20,000 for pre-'65 retirees. And that amount shall not be less than that, notwithstanding all future negotiations. The Watkins cap and the rest, those were caps. That set a specific maximum on Honeywell's contribution with nothing else. There was no shall not be less than. There was no notwithstanding all future negotiations. And there was nothing in those contracts that said what the purpose was for the protection of retiree health care benefits. But this says that it's a limit, right? The purpose of this provision was to limit their contributions. Well, it sets a floor. Now, it uses the term shall not be less than these amounts. The district court calls it a floor-level amount. Honeywell calls it a cap. But it's both, and it's really both a floor and a cap? It could be viewed that way as setting the minimum amount that they must pay. The maximum that they're obligated to pay. Upon expiration of the contract, yes, absent agreement with UAW. And that's why the language is for the protection, shall not be less than. Even if UAW and Honeywell were to agree in subsequent negotiations, they could increase the amount of Honeywell's health care contribution, but they can't reduce it. That makes it far different than the very, very limited caps that were present in the other cases. And that's why this language creates a fixed promise that survives expiration that can't be changed. So if the UAW and Honeywell cannot agree to reduce the dollar amount that is required to be contributed, even if they could not do that, and that's done for the protective retirees from future negotiations. If the UAW and Honeywell can't do it, surely Honeywell cannot unilaterally do it when the contract expires. They say, yes, we made these promises. Yes, we made specific dollar amounts. Yes, we did all of these things. Honeywell says they're all aspirational. But you don't use terms like shall not be less than notwithstanding all future negotiations. That's not aspirational. That's mandatory. And the contract does say, in response to Your Honor's questions, health care coverage includes hospitalization, et cetera, under the Blue Cross Blue Shield program or any program that the parties may negotiate. Well, Honeywell in 2016 did not want to negotiate any health care plans in the future. So they are stuck with the health care plan that was in effect, the Blue Cross Blue Shield plan. Now, Honeywell is self-insured, which means they bear all the risk. Blue Cross is the administrator of the plan. Honeywell is self-insured, which makes it also somewhat different than the other cases. So the health care coverage will be that provided under the Blue Cross Blue Shield plan. Otherwise ‑‑ I'm confused. So by making this promise, they agreed basically just to provide health care no matter what. It could be Blue Cross Blue Shield. It could be some other plan that gets negotiated. But if nothing gets negotiated, they still have some obligation. What's the obligation? Just to pay this money. Who does the money go to if there's no plan? And the contributions are supposed to be made on behalf of somebody. Well, Your Honor, because it's self-insured, the money essentially goes to Honeywell because it's a self-insured plan. They don't pay a premium to Blue Cross Blue Shield. It's a self-insured plan. So the money, the contribution is from the retiree to Honeywell to cover the cost of the health care plan. So if there is no negotiations, if there is no future plan, if Honeywell says we don't want to change the Blue Cross plan or we don't want to negotiate it, then they are stuck with the Blue Cross plan that was in effect under these contracts. What sticks them? What language sticks them, just the future negotiations language? I mean, where is the vesting? I mean, I'm thinking particularly in part of the CBA, for example, on pensions. It specifically says that this is a deferred vested pension payable on the first day of each retiree's 65th birthday quote during his lifetime. You don't have that equivalent language here. Well, where is it clear that this was intended to be vested, this floor-level premium contract? You have to read the promise as a whole. And when you read it as a whole, when it promises health care contributions at a fixed dollar amount that cannot be reduced in any future negotiations, that begins after expiration, that creates a promise that survives expiration of the contract. What's your best case for that? You mean in terms of the law? Yes. I would say Tackett and Reese. Reese says promises can be explicit, implied, or industry practice. What about our case, Fletcher? It says it has to be clear in order to be vested. Well, Fletcher has multiple ways of saying it. But in Fletcher, the fixation there was on the general duration clause, and they said the general duration clause trumps. And Honeywell, I call it the general duration uber alias. They invoke it all the time. General duration clause above all else. This case is easy to distinguish because if you look at the 2003 CBA, where the language was first put in there, it says this floor-level obligation does not begin until after the expiration of the contract. So you can't have a promise that begins after expiration and say it doesn't survive it. And Honeywell's position is the promise ends at expiration, but it actually began at expiration. Or began after. Began after expiration. So it must mean something, and Honeywell's interpretation renders it a complete nullity. Under Honeywell's interpretation, when the 2011 contract expired and Honeywell locked out the employees, all right, and then would not agree to any future, any other plan, Honeywell says, well, we can just wipe out the obligation. That these detailed promises of health care for the protection of retirees, these detailed promises that set dollar amounts that shall not be less than, all of those promises, Honeywell says, they're null and void. Why didn't the UAW say they want the vested language in these health care benefits like they had it in for the pension, for example? Your Honor, there's no obligation to use the word vesting or anything else. There's no magic words doctrine. The tacket doesn't say that. Reese doesn't say it. Let's use an example of the Constitution doesn't say federal judges have lifetime appointments. It says you shall serve for good behavior. The Federalist Paper don't even refer to lifetime appointments. What we all understand from history, context, and later, I think, federal statutes, that you have lifetime appointments. So there's no magic words that make these promises. The term vesting is used in ERISA because ERISA pension obligations require that the term vesting be used. It's a very specific term that's used. If you adopt the approach that, well, if you say vesting for pension and you don't say it for retiree health care, you lose, then what you are in essence saying is you need explicit, you need to use the word vesting as a matter of law, that the only way a retiree can win in the Sixth Circuit is if we have the word vesting in the contract. But haven't we essentially said that? Like Fletcher, Cooper, all these cases that came after Yardman was nullified. I mean, we were looking for really clear language, right? I mean, that's what we're looking for. Judge, I'm aware of the legal landscape in this circuit's post-tackit, and I have my disagreements with it. But I don't think that the court's rulings say that you have to have explicit language. If that's the holding, that that's contrary to what Reese said, Reese reversed the Sixth Circuit and it said you did not have explicit implied or industry practice. You had none of those things. Ordinary contract principles do not require express. Right, but last year's decision in Cooper v. Honeywell says, and I quote, if the parties had intended health care benefits to vest on retirement, they would have taken care to include express vesting language as they did for pension benefits to ensure that health care benefits would vest on retirement. That's what Cooper says, isn't it? Yes, Cooper was a limited promise of until age 65. It wasn't a lifetime case. And the court, in the opinions, does use language saying you don't have clear language. But Gallo, the first post-tackit decision that came down, Judge Sutton said, tackit does not create a clear statement rule. And no ordinary contract principle rule requires a clear statement rule. And what you have to do, I think, is look at the contract language, and particularly here, this is different from all the other ones. This is a promise that is unique, that you're not going to see, and it arises post-expiration. So by its very terms, it survives expiration. And that's what tackit said is, does the promise survive expiration? Otherwise, the general duration clause would control. Here, the promise doesn't even begin until after the expiration of the general duration clause, and it cannot be changed notwithstanding future negotiations. So I don't think the Sixth Circuit should say there's a clear statement rule, unless you're going to reverse Gallo and reverse some of the other ones. I've already said that in Fletcher, though. We can't overrule Fletcher, can we? I would like you to overrule Fletcher. Of course you would. But that's probably beyond my— Isn't the distinction what step you are on in the analytical determination of the question? The first question is whether there is clear language that—let me get my language right— regarding the general durational clause. That's the first step, whether there's clear, affirmative language. But the second step is what you have been talking about from Reese and Zeno. What it asks is if there is a clear, affirmative showing that the durational clause does not apply, you've got to jump that hoop. Once you're through that hoop, then the second question is, does the contract indicate that vesting has occurred? That is where the language from the United States Supreme Court on Reese comes in, because it notes that CBA can vest benefits by explicit terms, implied terms, or industry practice, which is what you've been saying. Our Zeno case goes on to say that once you've determined that the benefits are disconnected from this time frame, from the general durational clause, the agreement might well vest those benefits, even absent clear vesting language. So isn't the question before us, what step are we on in analyzing this case? Actually, that is the correct way to do it. You said it much better than I did, which is, what step are you in? When they get to the very end, they might say there's no clear language and the duration clause trumps. I think that's— But that's the first step, because you really don't get to the second issue until you've walked through the duration clause. That's what we talked about in the first argument, about the duration clause. And you've got to step through that border, step through that boundary, and then the question becomes, does the entirety of the contract, implicit, explicit, industry practice, show that vesting occurred? So what is your best argument, assuming durational clause is behind us, for why these terms vested a lifetime benefit? Because the promise is of health care contributions that shall not be less than a fixed dollar amount, notwithstanding all future negotiations. That means Honeywell must contribute at least this dollar amount, no matter what happens in the future, all future negotiations. So that's a promise that will continue after the contract expires and cannot be changed. That creates a promise that survives the general duration clause and can never be changed. That's the fixed amount. That creates vesting language. But at the very least, at the very least, one would have to say that language is at least ambiguous as to vesting. We think we win on the language, but at the very least, that language would be ambiguous. Questions? Thank you. Thank you. Maybe start out by telling us why the January 2008 that extends months beyond the expiration of the 2003 CBA doesn't cause vesting. Several reasons, Your Honor. So that's an argument that this Court has addressed several times now, that you have limits that take effect after CBA expiration, and the Court has rejected that argument in Fletcher, Cooper, Watkins, and Kohl. As this Court said in Kohl, the fact that the parties anticipated or even hoped that those benefits would continue in the future, would be renewed in the future, does not mean that Meritor, within the company there was Meritor, is bound to provide those benefits for the life of the retirees. And again, as this Court said in Fletcher, quote, the fact that Honeywell's contribution caps become effective after the CBA is expired, has been rejected by this circuit as a justification for finding ambiguity. So the fact that the – Is the distinction here that you have two additional things going on that did not go on in the other cases? The first one is that the – no, really the second one I think is the key, is that this takes effect after the contract, on a date certain after the contract expires, and includes the requirement that despite, without regard to any future negotiations, those seem to be two moving parts that are not present in the other cases that you're relying on. I disagree respectfully, Your Honor, because what this Court has recognized is that it's not unusual for the parties to anticipate that they might agree to renew retiree health care benefits in the next contract, and contract with that anticipation in mind. But it doesn't mean that the parties have agreed to vest those benefits for life no matter what happens in the future. As this Court again said in Fletcher, the fact that Honeywell anticipated providing health care benefits in the future does not mean that Honeywell is bound to provide such benefits forever. So the parties can contemplate about what might happen in the future, but not agree to vested benefits. Then how do you explain the without regard to all future negotiations? Your Honor, that is dealing with, again, if the parties agree to renew the retiree health care plan in the next CBA negotiations, then they are agreeing to the baseline of what Honeywell's contributions will be. But that language says without regard to. This is an effective promise without regard to future negotiations. And that's the difference. It does not matter what you negotiate in the future, because this promise stands without regard to future negotiations. I respectfully disagree. It does matter because the contributions, again, are for those who get health care coverage under a specific health care plan or a plan that the parties negotiate to replace that plan. So again, if the parties don't negotiate to replace that plan, and there's no plan in place, then that section of the contract just doesn't have any meaning anymore because it only goes to contributions under a specific plan. What does that language mean then, notwithstanding such negotiations? What's the meaning of that phrase? The meaning of that phrase is if there's a health care plan in effect and if the parties can renew it in the next CBA negotiation, Honeywell's contributions are going to be at 2007 levels. They're not going to be below that. And there's no dispute in this case that Honeywell paid those, but it is not a promise or an agreement that they will renew the retiree health care plan for the life of the people in this class. But that argument would apply to language if the insurance agreement said, these health care benefits are vested for life. Your argument says the same thing because you're saying, if you don't negotiate a new one, we just close down the plan, and it doesn't matter if you have life health care benefits if there's no plan. Absolutely. That would be a much different case if the contract said, these health care benefits are vested for life. As they said, other benefits were vested for life in this contract, like deferred vested pension and employee savings plans. We all know pension benefits always say they're vested because ERISA requires you to say they're vested. What we're talking about is what happens in terms of negotiated language, and the language that was negotiated here has those three parameters. I think that's what we're struggling with because it seems to me your argument, the argument that we can just shut down the plan, forever forecloses any statement as being sufficient, even the words that you're vested for life, because then your argument fits exactly what you're saying now. Oh, I know you were vested for life, but we've closed the plan, so there's nothing that you can get. I respectfully disagree with that. If the parties had signed a contract where they said retiree health care benefits or the retiree health care plan is vested for life of these retirees, we would not be here now. That would clearly be vesting language. This contract doesn't say that. In fact, it says the opposite of that. It says the insurance benefits terminate on a date certain, and it includes language saying that that durational provision in the agreement regarding insurance supersedes any contrary inferences that are in the plan, which is everything plaintiffs are relying upon. If there are no further questions. Further questions? Thank you. Thank you, Your Honors. I think it's clear that the promises here of the floor-level health care begin after expiration. So the general duration clause, which was the key determiner in Fletcher and some other cases, is not a barrier here. We also have language here for the protection of retiree health care benefits, which is explicit statement of the party's intention. And Tackett says the party's intentions control, and this language must be given meaning for the protection of retiree health care benefits, and that's how we're doing it. Honeywell was paying the full premium for a certain period of time in order to protect health care benefits to ensure the continuation of them. Honeywell's obligation will be fixed at a lower amount. But to protect retirees, it cannot be changed in all future negotiations. And that's what creates a vested promise, one that survives the CBA. And that's why we believe the retirees were entitled to summary judgment on that vesting issue. I have nothing else unless you have more questions. We thank you both. We appreciate your arguments. They'll be taken under advisement, and an opinion will be rendered in due course. Thank you. You may call the next case.